# COOS.

## JANUARY TERM, A. D. 1846.

---

## STATE *v.* BENTON & a.

The statute of 1845, chapter 239, imposing a penalty for bringing into this State, from another State, a poor and indigent person, having no visible means of support, and who has a settlement in such other State, does not apply to a case where the person so brought has his domicil and usual place of abode in this State.

INDICTMENT, alleging that the respondents, all of Lunenburg, Vt., on the 11th day of July, 1845, unlawfully brought one Esther Moore, a poor and indigent person, having no visible means of support, and having .a settlement in Vermont, into the town of Lancaster, in this county, and there left her, knowing her to ' be poor, and to have no visible means of support.

The following facts were agreed upon by the parties, and the question is submitted to this court, whether the indictment can be maintained :

In the year 1805 one Robert Moore had a settlement in Lancaster, or in some other town in New-Hampshire. In 1806 he removed to Lunenburg, Vt., where he resided until his death, in 1832. In the year 1831 he married Esther Stuart, the said pauper, and lived with her until his death. Moore was a man of considerable property.

In January, 1833, the pauper returned to Lancaster, and lived there until the year 1838. She then went to Peterborough, in this State, where she lived until January or February, 1841, when she was brought from that place

by the authorities of the town of Lancaster, and carried to Lunenburg, stopping at Lancaster one night on the way. She remained several weeks at Lunenburg, and was maintained by the authorities of that town. In March, 1845, she was brought to Lancaster by citizens of Lunenburg, and after staying there one or two nights she was carried to Lunenburg by the selectmen of Lancaster, but was brought back to Lancaster on the same day, and was maintained at Guildhall by the selectmen of Lancaster until the 4th day of July, when she was carried to Lancaster by the selectmen of that town, and after remaining there three days was carried to Lunenburg by the selectmen of Lancaster, on the 7th day of July. On the 9th she was brought to Lancaster by the citizens of Lunenburg. On the 10th she was carried to Lunenburg by the selectmen of Lancaster, and left there. On the 11th she was brought to Lancaster by the respondents, for which act this indictment was found.

*Wells*, for the State.

*Bellows*, for the respondents.

PARKER, C. J.   The statute under which this indictment was found provides, that " if any person shall bring from any other State and leave in any town in this State, or shall bring, with intent to leave, any poor or indigent person, having no visible means of support, and having a settlement in such State from which such poor and indigent person may be brought, knowing such person to be poor and indigent as aforesaid ; or shall counsel or procure such poor and indigent person to be so brought, or shall aid or assist therein," he shall be punished by fine or imprisonment ; " and shall be further liable to any town or county in this State for all such sums of money as may be expended by any town or county for the support and

State *v.* Benton.

maintenance of such poor and indigent person." Laws of 1845, chap. 239.

Upon a strict literal construction of this statute, if a person who had his home in this State, and was poor and had no means of support except his ability to labor, should go into another State where he had a settlement (derivative or otherwise) for a temporary purpose, intending to remain only an hour, and should, while there, by accident, become unable to return without assistance, it would be an offence for any person, even an inhabitant of this State, knowing the party to be poor, to bring him back to his home, and to the care of his wife and children, however much the poor person might have desired to return, and however much the party bringing him might have been actuated by mere motives of humanity. He would, on such construction, be liable to fine or imprisonment, and to pay all the expenses for the support and maintenance of such poor person, notwithstanding the fact that he had never before been in the State from which he was brought; his settlement there being derived from some ancestor who had resided there half a century previous.

That such a case would not be within the statute is quite evident. If a similar law were enacted in such other State, it would subject any person to fine or imprisonment there who should carry the wife of the poor person to that State, to take care of him there. So if any person should bring in a stage coach, or by other means of conveyance, a person known to him to be poor, who desired a passage, and who might temporarily be in another State.

We are of opinion that the statute does not apply to the cases of persons who have their domicil, home and usual place of abode, at the time, in this State, notwithstanding they may have a settlement in the other State. It was intended to prevent running paupers into this State who have a settlement in other States, and no home here.

Esther Moore had a home in this State, and should not have been carried to Vermont. The authorities of Lancaster had nothing to do with the fact that she had a settlement in Vermont. We do not inquire whether a person has a settlement in another State in ascertaining whether he has a settlement here, and cannot rightfully inquire into it, so far as regards support, if the poor person is domiciled in this State at the time.

The authorities of Lunenburg had a right to bring Esther Moore back. She was wrongfully carried there, and the fact that they supported her a few weeks does not change their liability. We should regret to adopt any construction of the statute which would countenance the running of paupers from one State to another in the shameful manner which appears to have been adopted in this case.

*Judgment for the respondent.*